**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RICHARD G. PESTELL, M.D., PH.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:19-cv-01563-RGA |
| | ) |
| CYTODYN INC.; CYTODYN OPERATIONS | ) |
| INC.; NADER Z. POURHASSAN, PH.D.; | ) |
| AND SCOTT A. KELLY, M.D., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS CYTODYN INC. AND CYTODYN OPERATIONS INC.'S
PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

Pursuant to Rules 12(b)(6) and 12(b)(2), of the Federal Rules of Civil Procedure, Defendants CytoDyn Inc. and CytoDyn Operations Inc. (collectively "Entity Defendants"), by and through their undersigned counsel, hereby move this court for dismissal of Counts Four and Two of the Amended Complaint and for dismissal of Nader Z. Pourhassan, Ph.D. and Scott A. Kelly, M.D. (collectively "Individual Defendants" and together with Entity Defendants the "Defendants") from this entire action.

In sum and as set forth more below:  (I) Count Four (regarding alleged defamation) should be dismissed because the alleged defamatory statements are indisputably true as shown by Plaintiff's own Exhibit D to the Complaint and Plaintiff has failed to plead any facts that overcome the qualified privilege; and (II) Count Two (regarding a Pennsylvania's Wage Payment Collection Law ("PWPCL") should be dismissed because the "wages" Plaintiff claims are due did not come due, if at all, at any time when any of the Defendants met the PWPCL's definition of "Employer" or the Plaintiff was "employee" for PWPCL purposes.  Entity Defendants also adopt the anticipated Individual Defendants' motion to dismiss Individual Defendants from the entire action for lack of personal jurisdiction.

**I.      Plaintiff Fails to State a Defamation Claim**

1.      Count Four of the Complaint, which pertains to alleged defamation and is directed against Entity Defendants only, should be dismissed due to Plaintiff's failure to state a claim upon which relief can be granted under Rule 12(b)(6).  It should also be dismissed because the allegedly defamatory statement (*i.e.,* that the reason for Plaintiff's termination was "cause") indisputably is true and the alleged publication was subject to a qualified privilege and Plaintiff fails sufficiently to plead actual malice.

2.      There are four elements of a cause of action for defamation in Delaware: (1) a false and defamatory statement concerning another; (2) unprivileged publication to a third party; (3) at least negligence on the part of the publisher; and (4) either actionability irrespective of special harm or the existence of special harm caused by publication.[1]

3.      Plaintiff's defamation claim fails as a matter of law on the first element because "[t]ruth is an absolute defense to a defamation action."[2]  Simply put, stating that a person was terminated on a particular basis when they were terminated on that basis is the type of truth that serves as an absolute defense.[3]

4.      In this case, the only allegedly defamatory statements by Entity Defendants are the representation that Plaintiff was terminated "for cause" pursuant to the terms of his

---

[1]      *See Masterson-Carr v. Anesthesia Services, P.A.*, 2015 WL 5168557, at *16 (Del. Super. Ct. Aug. 28, 2015).

[2]      *Davis v. W. Ctr. City Neighborhood Planning Advisory Comm., Inc.*, 2003 WL 908885, at *4 (Del. Super. Ct. Mar. 7, 2003) *aff'd*, 836 A.2d 513 (Del. 2003) (quoting *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1155 (Del. 1981)).

[3]      *See Naples v. New Castle Cty.*, 2015 WL 1478206, at *13 (Del. Super. Ct. Mar. 30, 2015), *aff'd*, 127 A.3d 399 (Del. 2015) (stating that where it is an undisputed fact that an employee was "in fact initially terminated in part because of his violations of the departmental gift policy," this statement "cannot give rise to a defamation claim").

employment agreement.[4]

5.  Plaintiff's Complaint with its Exhibit D establish indisputably that Plaintiff's employment ended when the Chairman of the Board sent a letter to Plaintiff on July 25, 2019, which Plaintiff himself characterizes as causing the end of his employment.[5]

6.  Specifically, that letter indisputably has a "RE" line that states "Termination of Employment for Cause."  As Plaintiff alleges in his Complaint (at ¶ 164), the Chairman of the Board stated in that letter that "the Board has determined you willfully and continuously have failed to perform the duties or obligations reasonably assigned to you by the Board from time to time, and that such willful and continued failure is not susceptible to cure, as determined in the sole judgment and discretion of the Board."  Indisputably, as alleged by Plaintiff, that reason is the third prong of the meaning of "Cause" under paragraph 4.1(b) of the Employment Agreement.[6]  As Plaintiff further recognizes in his Complaint (also at ¶ 172 and as shown in Exhibit D of the Complaint), that letter from the Chairman of the Board, states that "your employment with the Company is hereby terminated effective today, July 25, 2019."[7]

---

[4]  Compl. ¶ 182 (press release reporting that "The Company . . . terminated the employment of [Plaintiff] . . . for cause pursuant to the terms of his employment agreement with the Company and pursuant to the terms of his employment agreement"), ¶ 183 (a Form 8-K Current Report "filed . . . with the SEC" that stated Plaintiff was "terminated . . . for cause pursuant to the terms of his employment agreement"), ¶ 185 (a Schedule 14A Proxy Statement "filed . . . with the SEC" that "termination had been 'for cause'"), and ¶ 236 (summarizing the above as supposedly "falsely assert[ing] that Cause existed for his termination").

[5]  Compl., Ex. D; Compl. ¶¶ 180-181 (discussing the "Termination Letter" and framing July 26 as "the day after terminating Dr. Pestell's employment").

[6]  Compl. ¶ 61; Compl. Ex. A, Section 4.1(b) (defining "Cause" to include "willful and continued failure by the Executive to perform the duties or obligations reasonably assigned to the Executive by the Board from time to time, which failure is not cured upon ten (10) days prior written notice (unless such failure is not susceptible to cure, as determined in the sole judgment and discretion of the Board)").

[7]  Compl., Ex. D.

7.      Simply put, any statement that Plaintiff was terminated "for cause" pursuant to the terms of his employment agreement cannot be defamatory, as a matter of law, because it is the truth.  Plaintiff obviously disagrees with the determination that cause existed; and he is entitled to try to prove that "Cause" does not exist in this case.  Perhaps obviously, Entity Defendants disagree.  But that is a question for the breach of contract claim.  This Motion does not seek to dismiss Count One (alleging breach of contract).  As for the defamation claim (Count Four), Plaintiff will be unable to cite to any Delaware opinion supporting his apparent position that, under Delaware law, a defamation claim can be bootstrapped successfully to a breach of contract "cause" claim (where the issue of whether "Cause" existed will be litigated) where, indisputably, the published statement of the reason for termination is truthful.

8.      Plaintiff's defamation claim also fails as a matter of law on the second element because the alleged publications are all, as a matter of law, subject to a qualified privilege and Plaintiff fails to fulfill minimal pleading standards for alleging actual malice.

9.      A qualified privilege generally "extends to communications made between people who have a common interest for the protection of which the allegedly defamatory statements that are made or which are disclosed to any person who has a legitimate expectation in the subject matter."[8]  Delaware courts have recognized qualified privilege allowing employers "to make communications regarding the character, qualifications, or job performance of an employee or former employee to those who have a legitimate interest in such information."[9]

10.      More specifically, when accepting a high-ranking position at a public

---

[8]      *Masterson-Carr*, 2015 WL 5168557, at *17 (quoting *Gilliland v. St Joseph's at Providence Creek*, 2006 WL 258259, *9 (Del. Super. Ct. Jan 27, 2006)).
[9]      *Id.*

company, that person chooses "to accept the kind of accountability that would allow-nay, require" that company "to inform the investing public that [he] had been terminated"; and, "[h]owever uncomfortable it is, corporate officers in public companies cannot avoid public scrutiny. It comes with the job."[10]   Along with that comes the indisputable fact that a publicly traded company "has a duty to inform its shareholders" of terminations.[11]   Press releases of such terminations are shielded through a qualified privilege.[12]   This is particularly true where such is devoid of "adjectival attack" (which actually "suggests an absence of malice").[13]   As the Delaware Court of Chancery (through then Vice Chancellor Strine) explained, publically traded companies are "required to make periodic disclosures to the public" on various forms, and the circumstances surrounding the termination of executive officers is something in which "the public would have had an interest."[14]   Thus, the requirement of disclosure (and attendant privilege for purposes of defamation analysis) extends to documents such as a Form 8-K.[15]

11.    When qualified privilege applies, a plaintiff must demonstrate actual malice,

---

[10]    *Hampshire Group, Ltd. v. Kutttner, et al.*, 2010 WL 2739995, at *49 (Del. Ch. July 12, 2010).

[11]    *Id.*

[12]    *Id.* at *50 n.410 (citing *Abella v. Barringer Res., Inc.*, 260 N.J. Super. 92, 615 A.2d 288, 293 (N.J. Super. Ch .1992) (finding that allegedly defamatory statements in a SEC filing were protected by qualified privilege as furthering a legitimate public interest); *Carnegie Intern. Corp. v. Grant Thornton, LLP*, 2006 WL 990960, at *7 (Md. Cir. Ct. Mar.30, 2006) (explaining that absolute privilege protected statements in a Form 8-K and attached press release because, among other things, the publication was required by law)).

[13]    *Id.* at *4, 49, and 50 n.413.

[14]    *Hampshire Group*, 2010 WL 2739995, at *50 (citing 15 U.S.C. § 78(m) and 17 C.F.R. § 249.30, which govern filing requirements for public companies).

[15]    *Id.* at *50 (citing SEC Form 8-K at page 15, Item 5.02(b), available at http://www.sec.gov/about/forms/form8-k.pdf (last visited June 20, 2010) ("If the registrant's principal executive officer, president, principal financial officer, principal accounting officer ... or any person performing similar functions, or any named executive officer retires, resigns or is terminated from that position ... disclose the fact that the event has occurred and the date of the event.")).

not just negligence, to succeed in a defamation claim.[16]  For purposes of pleading, other courts have stated directly that "bald allegations of malice are insufficient to defeat immunity and that a plaintiff must allege with some clarity and precision those facts which make the act malicious."[17]  This court has applied that same standard in dismissing claims for defamation where there is nothing but a bald assertion or legal conclusion regarding alleged "malice."[18]

12.     In this case, the only alleged publications are the alleged "July 26 Press Release, July 26 8-K, and August 21 14A."[19]  Each of those are of the type that are subject to a qualified privilege.

13.     Because the disclosures that constitute the alleged publications were factually accurate, and Plaintiff has not alleged any facts that could constitute actual malice (and the absence of adjectival embellishment or negative characterization of Plaintiff also suggests an absence of malice), the defamation claim should be dismissed.

## II.     Plaintiff Fails to State a PWPCL Claim.

14.     For the reasons set forth in Individual Defendants' motion to dismiss, Individual

---

[16]     *Masterson-Carr*, 2015 WL 5168557, at *17 (stating "[t]he standard for actual malice is high. A hostile relationship between the plaintiff and the defendant is not sufficient. Once qualified privilege is established, it is not forfeited by the mere addition of the fact that a defendant feels indignation and resentment towards the plaintiff and enjoys making such statements.  The plaintiff bears the burden of showing that the statements were made primarily to further interests other than those protected by the qualified privilege and that the chief motive for making such statements was the defendant's ill will.") (internal quotation marks and footnotes omitted).

[17]     *Estate of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409, 422 (D. Md. 2014) (internal quotation marks omitted); *Gladhill v. Chevy Chase Bank, F.S.B.,* 2001 WL 894267, at *14 (Md. Ct. Spec. App. Aug. 1, 2001) (applying "bald assertions of actual malice" standard and granting motion to dismiss defamation claim).

[18]     *See Grubbs. v. University of Delaware Police Department*, 174 F. Supp. 3d 839, 861-62 (D. Del. March 29, 2016).

[19]     Compl. ¶ 232.

Defendants should be dismissed from this action under Rule 12(b)(2) for lack of personal jurisdiction.

15.     In addition, the only claim asserted against Individual Defendants (Count Two) should be dismissed under Rule 12(b)(6) because Plaintiff still fails to state a claim upon which relief can be granted.  Thus:  (a) Individual Defendants should be dismissed from this action for that additional reason; and (b) Count Two should be dismissed as to all Defendants.

16.     Specifically, in his Amended Complaint, Plaintiff understandably abandons his original Delaware Wage Payment and Collection Act claim after Entity Defendants filed their first motion to dismiss.  But Plaintiff's amended Complaint swaps that first doomed claim out in favor of an also-inapplicable Pennsylvania Wage Payment and Collection Law ("PWPCL") claim.[20]

17.     As Plaintiff correctly alleges, Entity Defendants are Delaware corporations with principal places of business in Vancouver, Washington.[21]

18.     Every element of "wages" that Plaintiff, in his PWPCL claim (Count Two), claims is due did not become due, if at all, until his <u>termination</u>, pursuant to terms of the Employment Agreement (attached as Exhibit A to the Amended Complaint), which Plaintiff correctly alleges contains a Delaware governing law and Delaware jurisdiction provision.[22]

19.     Indeed, Plaintiff frames all of the wages at issue in his Count Two as "<u>Separation</u> Obligations, as enumerated in Section 4.1(c) of the Employment Agreement."[23]  As Plaintiff must acknowledge, because it indisputably is revealed in the plain language of Section 4.1(c) of the Employment Agreement, such are <u>only</u> triggered, if at all, when Plaintiff's "employment is

---

[20]     *See* 43 P.S. § 260.2a.
[21]     Compl. ¶¶ 7-8.
[22]     Compl. ¶¶ 17, 67.
[23]     Compl. ¶ 215 (emphasis added).

terminated."[24]

20.     As of the filing of his original Complaint on August 22, 2019, and as of the filing of his Amended Complaint, on September 27, 2019, Plaintiff admits that he was a resident of Florida.[25]

21.     Plaintiff also alleges he "has been domiciled" in the State of Florida "since <u>March 2019</u>."[26]

22.     Plaintiff elaborates, alleging that he "relocate[d] to Fort Lauderdale" at least by March 2019.[27]

23.     Plaintiff alleges his employment was terminated on July 25, 2019.[28]

24.     Simply put, Plaintiff admits that, by the time any of the alleged "wages" first became due (*i.e.,* the date his employment terminated), he had relocated to, lived in, and was employed in Florida, which had been the case for at least four months and more like five months.

25.     "Employer" indisputably is defined under Section 260.2a of the PWPCL as someone that "employs any person <u>in the Commonwealth of Pennsylvania</u>."[29]

26.     Moreover, although "employee" is not defined in the PWPCL, case law consistently holds that only those employees "based in Pennsylvania" can be deemed covered by the law.  *See McGoldrick v. TruePosition Inc.*, 623 F. Supp. 2d 619, 629 (E.D. Pa. 2009) (noting

---

[24]     Compl., at Exhibit A, § 4.1(c) (emphasis added).
[25]     Compl. ¶ 6.
[26]     Compl. ¶ 12 (emphasis added).
[27]     Compl. ¶ 69.  Plaintiff's move away from Pennsylvania and to Florida, to work there, was at his own request, perhaps because he wanted to avoid paying Pennsylvania income tax. Indeed, no Pennsylvania wage tax was withheld from any wages paid to Plaintiff starting with the first pay period in March 2019.  While Plaintiff cannot honestly dispute that fact, his reason for the move is a fact <u>not</u> necessary to resolve this motion, which is premised on undisputed facts and a matter of law.
[28]     Compl. ¶ 181.
[29]     Compl. ¶ 209 (emphasis added).

8

only instance where someone working outside of Pennsylvania might have a claim is, unlike in this case, if a contract with the employer contains a Pennsylvania choice of law provision and/or Pennsylvania forum selection clause); *Killian v. McCulloch,* 873 F. Supp. 938, 942 (E.D. Pa. 1995), *aff'd,* 82 F.3d 406 (3d Cir. 1996) (finding that employee not "based in Pennsylvania" could not avail himself of PWPCL protections, based on finding that "[t]he legislature has a strong interest in enacting legislation to protect those who work in the Commonwealth, but has almost no interest in extending that protection to those who work outside Pennsylvania"); *Hides v. CertainTeed Corp.,* 1995 WL 458786, at *2 (E.D. Pa. July 26, 1995) (finding claim not stated under PWPCL where employee lived and worked outside of Pennsylvania); *Buche v. Liventa Bioscience Inc.,* 122 F. Supp. 3d 883, 885 (D. Minn. 2015) (dismissing PWPCL count and explaining simply that "[t]hose who work in Pennsylvania can sue under the Pennsylvania statute, but those who do not work in Pennsylvania cannot").

27.    Plaintiff cannot, as a matter of law, pick from among the various states statutes that have remedies that Plaintiff likes best, despite the inapplicability of those laws to him.   As a person residing in Florida who worked there at the time his employment ended, which is when all of the wages he claims are due first became due, he should be left to any statutory remedy that his state (Florida) offers (in addition to his breach of contract claim, which Entity Defendants obviously contest).[30]

28.    Because none of the alleged facts allow a conclusion that Defendants were "employers" (as meant in PWPCL) or the Plaintiff was an "employee" (as meant by

---

[30]    *See* Fla. Stat. § 448.10 (permitting claim for unpaid wages); *Buche,* 122 F. Supp. 3d at 887 (explaining that someone is not "effectively out of court" even if some other state's statue does not provide "additional remedies that might apply under [the PWPCL]" especially where such person can always, in theory, "recover every penny that he is owed" under a breach-of-contract action).

PWPCL), as a matter of law, Count Two of the Amended Complaint fails to state a claim upon which relief can be granted and must be dismissed.

WHEREFORE, Entity Defendants respectfully move for:  (1) dismissal of Count Four for the independently-sufficient reasons that the purported defamatory statement (*i.e.,* that Dr. Pestell's employment was terminated for Cause) indisputably is true and Plaintiff fails to allege any facts that could constitute actual malice; and (2) dismissal of Count Two because, under the undisputed facts, as a matter of law, none of the Defendants are "Employers" and Plaintiff is not an "employee" under the PWPCL, including at the time when any of the wages he claims are due would have come due (*i.e.,* at the time of termination).   Entity Defendants also move for dismissal of Individual Defendants from this entire action because, for the reasons stated in their anticipated Motion to Dismiss, Plaintiff cannot establish a basis for personal jurisdiction for Individual Defendants.

 Respectfully submitted,

CONNOLLY GALLAGHER LLP

*/s/ Timothy M. Holly*
Timothy M. Holly (Del. Bar No. 4106)
Aaron M. Shapiro (Del. Bar No. 3659)
Lauren P. DeLuca (Del. Bar No. 6024)
1201 North Market Street, 20th Floor
Wilmington, Delaware 19801
Telephone: (302) 757-7300
Facsimile:  (302) 757-7272
tholly@connollygallagher.com
ashapiro@connollygallagher.com
ldeluca@connollygallagher.com

*Attorneys for CytoDyn Inc. and*
Dated:  October 10, 2019     *CytoDyn Operations Inc.*

10