## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD G. PESTELL, M.D., PH.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:19-cv-01563-RGA |
| | ) |
| CYTODYN INC.; CYTODYN OPERATIONS | ) |
| INC.; NADER Z. POURHASSAN, PH.D.; | ) |
| AND SCOTT A. KELLY, M.D., | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS CYTODYN INC. AND CYTODYN OPERATIONS INC.'S
### REPLY ON ITS PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

Respectfully submitted,

CONNOLLY GALLAGHER LLP

*/s/ Timothy M. Holly*
Timothy M. Holly (Del. Bar No. 4106)
Aaron M. Shapiro (Del. Bar No. 3659)
Lauren P. DeLuca (Del. Bar No. 6024)
1201 North Market Street, 20th Floor
Wilmington, Delaware 19801
Telephone: (302) 757-7300
Facsimile:  (302) 757-7272
tholly@connollygallagher.com
ashapiro@connollygallagher.com
ldeluca@connollygallagher.com
*Attorneys for CytoDyn Inc. and*
*CytoDyn Operations Inc.*

Dated:  December 2, 2019

Defendants CytoDyn Inc. and CytoDyn Operations Inc. (collectively "CytoDyn"), by and through their undersigned counsel, submit the following in further support of their Partial Motion to Dismiss (D.I. 17) (the "Motion"), in reply to Plaintiff Richard G. Pestell's ("Plaintiff") memorandum (D.I. 20).

## I.      All Relevant Facts are Indisputable.

Plaintiff admits (AB at 13) that the reason he was given for termination was CytoDyn's determination that "Cause" existed, as stated in a letter titled "Re:  Termination of Employment for Cause," which shows termination was effectuated when and as follows:

> pursuant to Section 4.2 of the Employment Agreement, . . . your employment with the Company is hereby terminated effective today, July 25, 2019, (the "Separation Date") for Cause. Among other reasons, the Board has determined you willfully and continuously have failed to perform the duties or obligations reasonably assigned to you by the Board from time to time, and that such willful and continued failure is not susceptible to cure, as determined in the sole judgment and discretion of the Board.

Exhibit D of the Amended Complaint ("Compl.").[1]

Plaintiff claims three statements as defamation. The first statement (Compl. ¶ 183) is in a "Form 8-K Current Report," dated July 26, 2019, "filed . . . with the SEC," which is available in full online.[2]  Under the required "Item 5.02," CytoDyn indisputably disclosed:

> On July 25, 2019, the board of directors of CytoDyn Inc., a Delaware corporation (the "Company"), terminated the employment of Dr. Richard G. Pestell, the Company's Chief Medical Officer, for cause pursuant to the terms of his employment agreement with the Company and effective immediately. Pursuant to the terms of his employment agreement, upon such termination, Plaintiff resigned from his position as a director of the Company. Plaintiff was not a member of any board committees.

---

[1] The Employment Agreement (Compl. Ex. A) has been available online for review since before termination; and defines "Cause" to include the reason stated in the letter. https://www.sec.gov/Archives/edgar/data/1175680/000119312518329549/d648095dex105.htm.
[2] https://www.sec.gov/Archives/edgar/data/1175680/000119312519203155/d781262d8k.htm.

The second statement (Compl. ¶ 182) is in a "press release," dated July 26, 2019, titled "CytoDyn Executes Exclusive Worldwide Licensing Agreement with IncellDX for PA-14 and PRO 140 for Diagnostic Testing Purposes," which is available in full online.[3] The short portion of that document simply reports the above-quoted 8-K disclosure.

The final statement (Compl. ¶ 185) is a "Schedule 14A Proxy Statement," dated August 21, 2019, which is available online.[4] Under the required "Executive Compensation" section, among compensation of other executives, in a required footnote explaining what and why compensation previously reported might not be paid, CytoDyn indisputably disclosed Plaintiff:

> was terminated for cause effective July 25, 2019. Pursuant to the terms of the Plaintiff Employment Agreement and the 2012 Equity Incentive Plan, it is anticipated that the annual bonus amount listed in the "Bonus" column will not be paid, and the stock options whose fair market value is listed in the "Stock Option Awards" column will expire unvested, because Plaintiff was terminated for cause.

## II.     As a Matter of Law, Plaintiff Fails to State a Defamation Claim.

### A.     As a Matter of Law, the Statements Are Not "False and Defamatory."

The first element of defamation requires existence of "false and defamatory" statements. *Masterson-Carr v. Anesthesia Servs., P.A.*, 2015 WL 5168557, at *16 (Del. Super. Ct. Aug. 28, 2015). Plaintiff admits that CytoDyn has always characterized the basis for its employment decision as "for Cause." AB at 13; Compl. Ex. D. The indisputable statements show that is all CytoDyn stated. Allegations regarding CytoDyn's belief of "Cause" existing or motives in reaching that decision are irrelevant to the first element of his claim. *See id.* at *17. The

---

[3] https://www.globenewswire.com/news-release/2019/07/26/1892175/0/en/CytoDyn-Executes-Exclusive-Worldwide-Licensing-Agreement-with-IncellDX-for-PA-14-and-PRO-140-for-Diagnostic-Testing-Purposes.html.
[4] https://www.sec.gov/Archives/edgar/data/1175680/000119312519225739/d756874ddef14a.htm.

indisputable fact is that Plaintiff's employment ended when CytoDyn stated such was happening for "Cause"; and the indisputably accurate report of that decision is not a "false" statement.

No precedent (and certainly none from Delaware) supports the law Plaintiff asks this Court to create, which would contort the first element of defamation claims into a pretext analysis regarding intent such as in discrimination claims. Rather, when a company gives an employee a reason for "cause" for termination and then reports only that fact, no defamation exists. *See Naples v. New Castle Cty.*, 2015 WL 1478206, at *13 (Del. Super. Ct. Mar. 30, 2015), *aff'd*, 127 A.3d 399 (Del. 2015) (finding that when employer made decision to terminate in part because of violation of gift policy, statement of the fact "cannot give rise to a defamation claim"). Defamation claims have been and should be dismissed when, as here, alleged facts do not establish a claim. *See Battista v. Chrysler Corp.*, 454 A.2d 286, 291 (Del. Super. Ct. 1982) (granting motion to dismiss defamation claim despite "malice" allegation).

In incorrectly arguing (AB at 12) that there is some defaming character in stating termination was for Cause pursuant to terms of the Employment Agreement, Plaintiff deliberately (stating "*inter alia*") omits the most innocuous portion of the definition of "Cause" – failure to perform the duties or obligations assigned – which indisputably is the only basis of Cause given to Plaintiff. Compl. Ex. A at Section 4.1(b); Ex. D. Plaintiff admits (AB at 12) that definition is publicly available for review by anyone who cares enough to consider the issue. Plaintiff offers no authority supporting his position that this meaning of "Cause" presents actionable defamation under the indisputable facts of this case.

In arguing that some general defamatory meaning exists to "for cause," Plaintiff relies incorrectly on *Leyshon v. Diehl Controls of N. Am., Inc.*, 946 N.E.2d 864 (Ill. App. 2010), which applies Illinois's "innocent construction rule" where the context was "confirmation that the

3

reasons for the plaintiff's termination were gross insubordination, gross misconduct, gross negligence and willful violation of the law." *Id.* at 868, 872. That "confirmation" is what made for possible defamation. Indeed, another Illinois case, cited in the *Leyson* case, states clearly:

> a statement that an individual has been terminated "for cause" conveys little more than the obvious information that the person did not leave his or her employment voluntarily. In reaching this conclusion, we are aware that other courts have found that a statement that a party was terminated "for cause" is actionable . . . *Carney v. Memorial Hospital & Nursing Home* (1985), 64 N.Y. 2d 770, 485 N.Y.S.2d 984, 475 N.E.2d 451), however, we think that the better conclusion is that reached by the Connecticut Superior Court in *Terry v. Hubbell* (1960), 22 Conn.Supp. 248, 167 A.2d 919. There, it was held that the statement was not libel *per se* because "[t]aken in their 'natural and ordinary meaning,' the words 'discharged for cause' mean no more than that the plaintiff was released or dismissed from an office or employment for some undisclosed circumstance which operated to produce that effect.

*Skopp v. First Federal Sav. of Wilmette*, 545 N.E.2d 356, 359 (Ill. App. 3d Sept. 27, 1989).[5]  The three sterile statements at issue in this case are far more like those in *Skopp* than those in *Leyson*; regardless, Delaware has not adopted Illinois's "innocent construction rule."

Plaintiff fares no better with *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 383, 387-88 (S.D. N.Y. 2018), in which the court merely considered the single issue of whether "statements in the SEC filings are 'subject to absolute privilege under New York common law,'" which turns on whether such was/ could be part of a "proceeding" as required by that law. That law is not at issue in this case; and the court in *Fischkoff* went out of its way to note the movant had not argued law recognizing a privilege for a "fair and true report" – perhaps implying that a motion to dismiss might succeed. *Fischkoff*, 339 F. Supp. 3d at 390.

---

[5] The *Skopp* case rejects a New York case Plaintiff relies upon – the *Carney* case. Moreover, the *Carney* case involves a publication in a newspaper (not disclosure to investors in SEC filings); and "cause" was not, as here, defined in an agreement that includes merely not performing assigned duties or responsibilities.

Nor does *Weber v. FujiFilm Med. Sys. U.S.A., Inc.*, 854 F. Supp. 2d 219, 234-35 (D. Conn. 2012) save Plaintiff's claim. That case involves multiple unspecified statements including at least that the employee was terminated related to "a major compliance violation" and that the plaintiff was a "cancer." *Id.* at 226-227, 234-235.[6] Under Connecticut law, "natural and ordinary meaning [of] the words 'discharged for cause' mean no more than that the plaintiff was released or dismissed from an office or employment for some undisclosed circumstance." *Terry v. Hubbell*, 167 A.2d 919, 923 (Conn. Super. 1960).

Other states that Plaintiff ignores specifically reject his idea that "for cause" is defaming:

> A statement that someone has been terminated from employment or terminated for cause, without more, is not defamatory. . . . [I]n the employment context the term "for cause" encompasses an array of matters which would not subject one to public contempt or repel others, e.g., excessive absence, sloppy paperwork, disregard of safety rules, damage to or loss of company property, insubordination, use of a company computer for personal purposes, unauthorized use of a company vehicle, fighting with a co-worker. . . . Many persons have been terminated "for cause" without losing esteem in their community or the association of others.

*Pikington v. CGU Ins. Co.*, 2000 WL 33159253, *5 (E.D. Pa. Feb. 9, 2001) (internal citations omitted). *See also Estepp v. Johnson Cty. Newspapers, Inc.*, 578 S.W.3d 740, 744 (Ky. Ct. App. June 28, 2019) (stating, "[w]e agree with our sister jurisdictions that a mere statement of discharge from employment, whether it be termed "terminated" "removed" "discharged for cause" or "fired" even if untrue, is not *per se* defamatory").

Delaware seems to (and should) side with the position that merely stating an employee has been terminated "for cause" is not defamatory. In *Pennington v. Scioli*, 2011 WL 3568266, at *1 (Del. Super. Ct. Feb. 16, 2011), a letter stated that termination was "for

---

[6] In *Weber*, the employer's intent was relevant to the privilege issue – not whether statements were false and defamatory. In Connecticut, malice extends to "improper or unjustifiable motive"; and that case involved a discrimination claim where "cause" was claimed to be pretext for unlawful motive. There is no discrimination claim here; and Connecticut law does not apply.

cause" <u>and</u> that a "cease and desist order had been issued" <u>and</u> that legal action against plaintiff was "pending." "[N]o cease and desist order had been issued and there was no pending legal action against Plaintiffs." *Id.* at *4. There is no indication that "for cause" (without the other statements) would have been considered actionable as defamation under Delaware law.

Although Plaintiff relegates *Hampshire Group* to a footnote (AB at 15 n.6), it is meaningful for the proposition that statements in reports to stockholders regarding high ranking employee termination events are particularly non-defaming when free of "adjectival assault," "adjectival attack," or "adjectival embellishment." *Hampshire Grp., Ltd. v. Kuttner*, 2010 WL 2739995, at *4, *49-50, *50 n.413 (Del. Ch. July 12, 2010). When a person accepts a "high-ranking position[] at a public company," by nature of the position, the person "choos[es] to accept the kind of accountability that would require [the employer] to inform the investing public that [s/he] had been terminated"; and "corporate officers in public companies cannot avoid public scrutiny. It comes with the job." *Id.* at *49. CytoDyn's disclosure of its indisputable decision, free of any adjectival assault, attack, or embellishment, is the type the Court of Chancery recognized as non-defaming. A holding that such can give rise to a defamation claim would create new, incorrect law negatively impacting a multitude of publicly traded companies with reporting obligations.

### B.      As a Matter of Law, the Statements Are Privileged.

The Court of Chancery found "persuasive" the reasoning of courts finding that a qualified privilege exists for each of the three publications at issue in Plaintiff's defamation claim. *Hampshire Grp.*, 2010 WL 2739995, at * 50.[7]   Indeed, the SEC states that "companies must

---

[7] Some courts recognize <u>absolute</u> privilege for statements in SEC filings and related press releases because such are "required by law." *Hampshire Grp.*, 2010 WL 2739995, at *50 n.410 (citing *Carnegie Int'l. Corp. v. Grant Thornton, LLP*, 2006 WL 990960, at *7 (Md. Cir. Ct. Mar.

report certain material corporate events on a . . . current basis . . . to announce major events that shareholders should know about"; and "[c]ompanies have four business days to file a Form 8-K for the events specified in Item 5.02."[8]  Federal regulations and securities law require additional narrative or footnote disclosure when necessary to explain material factors necessary to an understanding of information disclosed, including (as in this case) when and why certain previously reported compensation entitlements are unlikely to be required to be paid.  *See e.g.,* 17 C.F.R. § 229.402(o).

"A finding of conditional privilege conditionally negates the presumption of malice and shifts the burden to the plaintiff to show actual malice." *Battista v. Chrysler Corp.*, 454 A.2d 286, 291 (Del. Super. Ct. 1982) (granting motion to dismiss despite allegation of actual malice).[9] Plaintiff hopes to salvage his claim based on an allegation of "actual malice," but:

> [t]he standard for actual malice is high. A hostile relationship between the plaintiff and the defendant is not sufficient. Once qualified privilege is established, it is not forfeited by the mere addition of the fact that a defendant feels indignation and resentment towards the plaintiff and enjoys making such statements. The plaintiff bears the burden of showing that the statements were made primarily to further interests other than those protected by the qualified privilege and that the chief motive for making such statements was the defendant's ill will.

*Masterson-Carr v. Anesthesia Sers. PA*, 2015 WL 5168557, at *17 (Del. Super. Ct. Aug. 28, 2015) (internal quotes omitted) (citing *Battista*, 454 A.2d at 291). A qualified privilege "is not forfeited by the mere addition of the fact that a defendant feels indignation and resentment

---

30, 2006)). The *Carnegie* case discusses at length the mandate of the SEC and its regulations and that reports such as those at issue in this case are to assure that the public who might invest is given timely, comprehensive, meaningful financial and other information to judge whether to buy, sell, or hold a particular security. *Carnegie*, 2006 WL 990960, at *3-4.
[8] https://www.sec.gov/fast-answers/answersform8khtm.html.
[9] The *Moretti v. Hertz Corp.*, 2017 WL 1032783, at *3 (D. Del. Mar. 17, 2017) case Plaintiff relies upon has nothing to do with defamation. That defense was entirely on the defendant; and the court noted that a motion to dismiss based on that defense can and has succeeded. *Id.* at *10 (citing *Kabbai v. Google, Inc.*, 2014 WL 1369864 (D. Del. Apr. 7, 2014)).

towards the plaintiff and enjoys making such statements"; and a plaintiff's burden requires "a showing that the statements were made primarily to further interests other than those protected by the qualified privilege and that the chief motive for making such statements was the defendant's ill will. *Battista*, 454 A.2d at 291.

While privilege can be lost by the "making of a statement which the speaker knows is false," Plaintiff incorrectly focuses on motive <u>in reaching the decision to terminate</u> him for Cause rather than motive <u>in making the decision to report</u>. Moreover, Plaintiff misapplies *Pierce v. Burns*, 185 A.2d 477 (Del. 1962) (AB at 14, 15, 16), which involves a union that did <u>not</u> find its member to have violated a "habitual drunkard" standard but nonetheless read that standard when making a required report on a different, found violation. *Id.* at 478, 480. Similarly, in *Stiner v. Univ. of Del.*, 243 F. Supp. 2d 106, 116 (D. Del. 2003), the employer had an employee listed as "academically qualified" but then, without explanation, stated that the employee was "academically unqualified." And, in *Wooleyhan v. Cape Henlopen Sch. Dist.*, 2011 WL 1875710 (D. Del. May 17, 2011), a student alleged defamation based on a teacher's statement to a law enforcement officer that the student offensively touched her, where it was alleged that no offensive touching occurred and that the teacher knew it. Those cases would be materially different if the union member was found to have violated the "habitual drunkard" standard; the employee had always been found "academically unqualified"; and the student had been disciplined because of offensive touching. There is no indication in those cases that a privilege in reporting such findings/discipline could be deemed lost even if the reporter had some reason to believe or even know the underlying findings/discipline was reached in error or with bad motive.

Here, CytoDyn indisputably <u>did</u> find Cause exists to terminate (Compl. at Ex. D) and thus its statements of "termination for Cause" is not potentially defamatory under *Pierce*, *Stiner*,

or *Wooleyhan*, regardless of why that decision was reached and regardless of Plaintiff's claim

(which CytoDyn will dispute but is not part of this Motion) that Cause is lacking.

## III.     As a Matter of Law, PWPCL Does Not Apply.

Plaintiff's claim under 43 P.S. § 260.1, *et seq.* ("PWPCL") finds no support in *Jesse v.*

*Sphinx Systemhouse, Inc.*, 2011 WL 5865491 (N.D. Ill. Nov. 17, 2011), where there was a

question of fact regarding if the employer had its principal place of business in Pennsylvania;

and the court was persuaded by cases involving facts where an employer was either located in

Pennsylvania or the employment agreement was governed by Pennsylvania law. *Id.* at * 3 & n.3.

CytoDyn's principle place of business indisputably is Washington (Comp. ¶¶ 1, 7, 8); the

employment agreement indisputably is not governed by Pennsylvania law (Compl., Exhibit A at

§ 5.6); and Plaintiff admits that, by the time any allegedly-owed wage became due, he resided in,

was a citizen of, was domiciled in, and otherwise had relocated to Florida and that such had been

the case for approximately five months at that point. (Comp. ¶¶ 6, 12, 69; AB at 18).

This case is similarly, meaningfully different from *Eastland v. Du Pont*, 1996 WL

421940 (E.D. Pa. July 23, 1996), where the employee did not allege any similar facts and was

silent regarding where he performed tasks and if/how much time he spent in Pennsylvania.

Nothing in the two paragraphs Plaintiff cites (Compl. ¶¶ 84, 86) even implies that he did

anything while in Pennsylvania during the last five months of employment, including the end,

which is when – if ever – relevant compensation became earned. In his brief but not his

complaint, Plaintiff claims, in the passive voice and thus stopping short of representing that he

actually did anything while in Pennsylvania during the last five months of his employment,

vaguely says he had ongoing responsibilities over "research activities" "being carried out" at a

lab in Pennsylvania. But that is not enough by a longshot, especially under the facts Plaintiff alleges to support extending *Jesse* or *Eastland* to find that Plaintiff states a PWPCL claim.

The final case Plaintiff relies upon for his PWPCL claim is *McGoldrick v. TruePosition, Inc.*, 623 F. Supp. 2d 619 (E.D. Pa. 2009), in which there was <u>no</u> choice of law or forum clauses in the agreement. *Id.* at 629, 631. Here, those clauses indisputably exist and Pennsylvania is not the law or the forum. *See* Compl, Ex. A at § 5.6. Nor does any other factor support Plaintiff's claim. Plaintiff admits that CytoDyn is incorporated in Delaware and has its headquarters in Washington. Comp. ¶¶ 1, 7-8. Plaintiff does not allege that he was supervised from Pennsylvania or that his supervisor was in Pennsylvania or that he was terminated while in Pennsylvania. Plaintiff acknowledges that the CEO and the Chairman of the Board have their places of business in Washington and Georgia. Compl. ¶¶ 9, 10. And Plaintiff indisputably was terminated by letter sent from Washington to him in Florida – he was not terminated in Pennsylvania. Compl. at Ex. D. Also, unlike the employee *in McGoldrick* who lived in Ireland, Plaintiff may have a Florida statutory claim (albeit meritless) for wages, to the extent that even matters.[10]

In sum, as a matter of law, the defamation claim must be dismissed because the relevant statements indisputably are not "false and defamatory" and the qualified privilege applies; and the PWPCA must be dismissed because it does not apply.

---

[10] Even an out-of-state employee who might not have another state statute claim for wages is not "effectively out of court" because "[s]uch an employee could bring a breach-of-contract action against the employer . . . and recover every penny that he is owed. That employee would be deprived only of any additional remedies that might apply under a particular state's wage-protection law." *Buche v. Liventa Bioscience, Inc.*, 112 F. Supp. 3d 883, 887-88 (D. Minn. 2015) (applying *McGoldrick* and dismissing PWPCL claim).

CONNOLLY GALLAGHER LLP

*/s/ Timothy M. Holly*
Timothy M. Holly (Del. Bar No. 4106)
Aaron M. Shapiro (Del. Bar No. 3659)
Lauren P. DeLuca (Del. Bar No. 6024)
1201 North Market Street, 20th Floor
Wilmington, Delaware 19801
Telephone: (302) 757-7300
Facsimile:  (302) 757-7272
tholly@connollygallagher.com
ashapiro@connollygallagher.com
ldeluca@connollygallagher.com
*Attorneys for CytoDyn Inc. and*
*CytoDyn Operations Inc.*

Dated:  December 2, 2019