# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

RICHARD G. PESTELL, M.D., PH.D.,

        Plaintiff,

    v.

CYTODYN INC.; CYTODYN OPERATIONS
INC.; NADER Z. POURHASSAN, PH.D.;
AND SCOTT A. KELLY, M.D.,

        Defendants.

Civil Action No. 1:19-cv-01563-RGA

## PLAINTIFF'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANTS CYTODYN INC. AND CYTODYN OPERATIONS INC.'S FIRST AMENDED COUNTERCLAIMS

Plaintiff Richard G. Pestell, M.D., Ph.D. ("Plaintiff" or "Dr. Pestell"), by and through his undersigned counsel, hereby answers and asserts affirmative defenses to the First Amended Counterclaims filed by Defendants CytoDyn Inc. and CytoDyn Operations Inc. (collectively, "CytoDyn" or the "Company"), as follows:

## ANSWER

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      The allegations in paragraph 4 constitute conclusions of law to which no response is required and are therefore denied. By way of further response, CytoDyn's First Amended Counterclaims do not contain any allegations supporting the purported existence of damages in excess of $75,000. Plaintiff denies and disputes that any damages are owed to CytoDyn.

5.      Admitted in part; denied in part. It is admitted that Plaintiff entered into an Employment Agreement and a Confidential Information, Inventions and Noncompetition

Agreement with the Company, both of which are written documents which speak for themselves. The remainder of the allegations contained in paragraph 5 constitute conclusions of law and are therefore denied.

6.      Admitted.

7.      Denied.  Plaintiff lacks knowledge or information sufficient to form a belief as to the truth of allegations concerning CytoDyn's activities "before knowing of or associating in any way with [Plaintiff]."

8.      Denied.  Plaintiff lacks knowledge or information sufficient to form a belief as to the truth of allegations contained in paragraph 8.

9.      Admitted.

10.     It is admitted only that, at various points prior to his employment with the Company, Plaintiff expressed optimism about the potential efficacy of PRO 140 for the treatment of cancer and other diseases.  The remainder of the allegations in paragraph 10 are denied, including any inconsistent characterization of Plaintiff's prior public statements, which speak for themselves.

11.     Admitted in part; denied in part.  It is admitted only that Plaintiff and the Company engaged in discussions concerning the Company's acquisition of certain assets of ProstaGene.  The remainder of the allegations contained in paragraph 11 are denied.  Further responding, the quoted language contained in paragraph 11 appears to be from Schedule 4.1(a)(4) of the Transaction Agreement, which is a written document which speaks for itself, and Plaintiff denies any inconsistent characterization thereof.  Plaintiff denies making the "publically [sic] described" statement alleged in paragraph 11.

12.     Admitted in part; denied in part.  It is admitted only that Plaintiff and the Company reached an agreement concerning the Company's acquisition of certain assets of ProstaGene, the terms of which are set forth in the Transaction Agreement, which is a written document which speaks for itself.  The remainder of the allegations contained in paragraph 12 are denied.

13.     Admitted in part; denied in part.  It is admitted only that Plaintiff and the Company engaged in discussions concerning the Company's acquisition of certain assets of ProstaGene.  The remainder of the allegations contained in paragraph 13 are denied.

14.     Admitted in part; denied in part.  It is admitted that: (i) a Transaction Agreement dated August 27, 2018, was entered into among CytoDyn, certain of CytoDyn's affiliates, ProstaGene, and, solely with respect to certain sections, Plaintiff; and (ii) Plaintiff held more than a 70% equity interest in ProstaGene as of that date.  The remaining allegations contained in paragraph 14 purport to characterize a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

15.     Admitted in part; denied in part.  It is admitted that the Transaction Agreement required CytoDyn to pay ProstaGene in shares of CytoDyn's common stock and that Plaintiff signed the Transaction Agreement on behalf of ProstaGene, and, solely with respect to certain sections, in his individual capacity.  It is also admitted that prior to entering into the Transaction Agreement, the parties discussed a variety of transaction structures.  The remainder of the allegations in paragraph 15 are denied.  The Transaction Agreement is a written document which speaks for itself.  Further responding, the initial transaction proposed by ProstaGene was for a stock transaction with cash to cover capital gains taxes that would be incurred by ProstaGene's

members, but, because CytoDyn had insufficient cash on hand and substantial outstanding accounts payable, the parties instead agreed to an all-stock deal.

16. Admitted.

17. Admitted.

18. Denied. Further responding, while Plaintiff owns a majority of ProstaGene's equity interests, ProstaGene has a board of managers which makes decisions regarding, *inter alia*, distribution of the stock of CytoDyn received by ProstaGene under the Transaction Agreement.

19. Admitted in part; denied in part. It is admitted only that 8,342,000 shares of the 27,000,000 shares of CytoDyn stock payable to ProstaGene at closing were distributed to Plaintiff and made subject to the Stock Restriction Agreement attached as Exhibit B to Plaintiff's First Amended Complaint (and incorporated by reference in the Third Amended Complaint). The remainder of the allegations in paragraph 19 are denied. Plaintiff lacks knowledge or information sufficient to form a belief as to the truth of allegations concerning CytoDyn's reasons for entering into the Stock Restriction Agreement, and the same are therefore denied. The Stock Restriction Agreement is a written document which speaks for itself.

20. Denied. Schedule 4.1(a)(4) of the Transaction Agreement is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied. In particular, Plaintiff denies the attempt to characterize an asset formerly owned by ProstaGene and now owned by the Company and specifically captioned in the Transaction Agreement as "Seller Trade Secrets" as "Pestell Trade Secret Summary."

21. Denied. The Transaction Agreement is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

22.     Admitted in part; denied in part.  It is admitted only that, in accordance with Section 7.8 of the Transaction Agreement, Plaintiff and ProstaGene executed a Bill of Sale.  The Bill of Sale is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.  Further responding, the Bill of Sale is dated November 16, 2018.

23.     Denied, insofar as the Bill of Sale is a written document which speaks for itself.

24.     Denied, insofar as the Bill of Sale is a written document which speaks for itself.

25.     Denied.  The Bill of Sale is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

26.     Denied.  The Bill of Sale is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

27.     Denied.     Further responding, on knowledge and belief, all property and information purchased by CytoDyn pursuant to the Transaction Agreement (other than patents and patent applications which are "located," if anywhere, at the relevant patent office) was located, at all times from closing and at least through the time of Dr. Pestell's termination, in the laboratory space at the Lankenau Institute for Medical Research ("LIMR"), the Occupancy Agreements for which CytoDyn assumed effective November 16, 2018.  Additionally, the gene signature was transmitted to CytoDyn's patent counsel no later than via courier on December 5, 2018 and via email on December 10, 2018.

28.     It is admitted that Plaintiff entered into a Confidential Information, Inventions and Noncompetition Agreement, which the Employment Agreement refers to and defines as the "Covenants Agreement."

29.     Denied as stated.  The Employment Agreement, which is attached as Exhibit A to Plaintiff's First Amended Complaint (and incorporated by reference in the Third Amended Complaint), includes an unexecuted copy of the Covenants Agreement, as Schedule A thereto. The executed copy of the Covenants Agreement is not attached to the First Amended Complaint.

30.     Denied.  The Covenants Agreement is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

31.     Denied.   The Transaction Agreement and Covenants Agreement are written documents which speak for themselves, and any inconsistent characterizations thereof are denied.

32.      Admitted in part; denied in part.  It is admitted only that ProstaGene sold assets to CytoDyn, including assets relating to a prostate diagnostic test, pursuant to the terms of the Transaction Agreement, which is a written document which speaks for itself.  The remainder of the allegations contained in paragraph 32 are denied.

33.     Denied.

34.     Denied.  The Transaction Agreement, which sets forth the "Purchased Assets," is a written document which speaks for itself, and any inconsistent characterization thereof is denied.  Further responding, the Transaction Agreement does not specifically identify or list the items which are enumerated in paragraph 34.  In any event, all documentation and data relating to the "PCa Test" were contained on the computers and equipment contained in the LIMR laboratory, for which CytoDyn assumed the Occupancy Agreements effective November 16, 2018.

35.     Denied.  The Covenants Agreement is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

36.     Denied.  The Covenants Agreement is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

37.     Denied.  The Covenants Agreement is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

38.     Admitted.

39.     Admitted.

40.     Denied.   The Employment Agreement is a document which is in writing and speaks for itself, and any consistent characterization thereof in paragraph 40 or its subparts (a) through (c) is denied.

41.     Denied.  The Employment Agreement is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

42.     Denied.  The Employment Agreement is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

43.     Denied.  The Employment Agreement is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

44.     Denied.  The Employment Agreement is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

45.     Denied.   Plaintiff's pleading is a written document which speaks for itself. Further responding, Plaintiff seeks recovery of, *inter alia*, Separation Obligations, which are defined in Section 4.1(c) of the Employment Agreement and include, *inter alia*, the Accrued Obligations.

46.     It is admitted only that Plaintiff was paid his accrued salary, vacation, reimbursements, and certain benefits through the date his employment was terminated.  Further

responding, Plaintiff seeks recovery of all unpaid Separation Obligations, of which the Accrued Obligations are a portion. Plaintiff is also entitled to the other Separation Obligations – including, *inter alia*, severance through November 2021, payment of certain bonus amounts, and vesting of certain stock options – which have not been paid.

47. Denied. The Employment Agreement is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

48. Denied. The Employment Agreement is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

49. Denied.

50. Denied. Further responding, the CEO discussed the Company's plan to open an office in Florida in advance of Plaintiff's move. The opening of the office in Fort Lauderdale was part of the Company's and the CEO's plan to expand CytoDyn's national presence and facilitate investor meetings on the East Coast.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

   (a) Denied.

   (b) Denied.

   (c) Denied. Further responding, Plaintiff's responsibilities as CMO included frequent domestic and international travel, including but not limited to for the purpose of giving presentations on behalf of CytoDyn at conferences and

meetings worldwide and for the purpose of meeting with potential investors. Plaintiff remained available and responsive to communications from the CEO and other Company personnel during these travels. Furthermore, Section 2.4 of the Employment Agreement permitted Plaintiff to continue engaging in a broad range of other professional activities, as specified therein, in addition to his role as CytoDyn's CMO.

(d)     Denied.

(e)     Denied.

(f)     Denied.

(g)     Denied.

(h)     Denied.

(i)     Denied.

(j)     Denied.

(k)     Denied.  Further responding, the CEO's directives for Plaintiff not to speak with other Company personnel or partners prevented Plaintiff from being able to perform his duties as CMO.

(l)     Denied.  Further responding, subpart (l) of paragraph 55 misquotes and mischaracterizes Plaintiff's email communications, which are written documents which speak for themselves.  In email communications during June 2019 relating to the draft protocol which Plaintiff, Amarex, and Professor John Marshall (CytoDyn consultant) were preparing for submission to the FDA, Plaintiff, in his capacity as CMO, advised the CEO that the then-current protocol was not ready for submission and needed to be revised because it "places patients at risk," due to

a higher incidence of side effects. Thereafter, the protocol was revised to lessen possible side effects, based on the recommendations of Plaintiff, Professor Marshall, and Amarex.

(m)     Denied.

(n)     Denied.

(o)     Denied.

56.     Denied.

57.     Denied.

58.     Admitted in part; denied in part. It is admitted only that on July 1, 2019, the CEO sent an email to the Board of Directors seeking to terminate Plaintiff's employment, purportedly for Cause (the "July 1 Email"). The remainder of the allegations in paragraph 58 are denied.

59.     Admitted in part; denied in part. It is admitted that a Board member forwarded the July 1 Email to Plaintiff and that subsequently Plaintiff, through counsel, sent a letter to the Company notifying it of the existence of "Good Reason" (as defined in the Employment Agreement) for his resignation. The remainder of the allegations in paragraph 59 are denied.

60.     It is admitted only that the Company terminated Plaintiff's employment on July 25, 2019, purportedly for Cause. The remainder of the allegations in paragraph 60 are denied.

61.     It is admitted only that the Company terminated Plaintiff's employment on July 25, 2019, purportedly for Cause. The remainder of the allegations in paragraph 61 are denied.

62.     It is admitted only that the Company sent Plaintiff a letter terminating his employment on July 25, 2019, purportedly for Cause. The Termination Letter is a written document which speaks for itself.

63.     Denied.  The Termination Letter is a written document which speaks for itself.  It is specifically denied that Cause for termination existed.

64.     Denied.  The Termination Letter is a written document which speaks for itself.  It is specifically denied that Cause for termination existed.

65.     Denied.   The Termination Letter and Covenants Agreement are written documents which speaks for themselves, and any inconsistent characterization thereof is denied.

66.     Denied.  Further responding, all documentation and data relating to the PCa Test has been in the Company's possession since at least November 16, 2018 when the Transaction Agreement closed.

67.     It is admitted only that Plaintiff has not provided an executed copy of the form of acknowledgment that is attached to the Covenants Agreement.  The remainder of the allegations in paragraph 67 are denied, including insofar as they constitute legal conclusions to which no response is required.

68.     Denied.

69.     Admitted in part; denied in part.  It is admitted only that Plaintiff commenced this action on August 22, 2019 by publicly filing the Complaint, which is a written document which speaks for itself.  The remainder of the allegations in paragraph 69 are denied.

70.     Admitted in part; denied in part.  It is admitted that on September 16, 2019 CytoDyn filed a motion to dismiss Plaintiff's original Complaint in part.  It is denied that CytoDyn's original motion to dismiss was "later granted in part."  Further responding, Plaintiff filed his First Amended Complaint on September 27, 2019, and CytoDyn filed a partial motion to dismiss in response, which the Court granted solely as to Count 2 on June 12, 2020.

71.     Admitted in part; denied in part.  It is admitted only that on September 13, 2019, the Company sent Plaintiff a letter with the subject line "RE: Exercise of Repurchase Option," purporting to exercise its repurchase rights under the Stock Restriction Agreement.  The remainder of the allegations in paragraph 71 are denied.  The September 13, 2019 letter and the Stock Restriction Agreement are written documents which speak for themselves.

72.     Admitted in part; denied in part.  It is admitted only that on September 27, 2019 Plaintiff, through his counsel, publicly filed the First Amended Complaint, which is a written document which speaks for itself.  The remainder of the allegations in paragraph 72 are denied.

73.     Admitted in part; denied in part.  It is admitted only that in or around September 2019, Plaintiff sold shares of the Company's common stock.  The remainder of the allegations contained in paragraph 73 are denied.  Further responding, Plaintiff's sales of Company stock were conducted fully in accordance with applicable securities laws.

74.     It is admitted only that counsel for CytoDyn sent a letter to Plaintiff's counsel on September 30, 2019, which is a document that is in writing and speaks for itself.

75.     Admitted in part; denied in part.  Plaintiff admits only that his counsel sent a letter to CytoDyn's counsel on October 4, 2019 (the "October 4 Letter"), which is a document that is in writing and speaks for itself.  The remainder of the allegations in paragraph 75 are denied.  It is specifically denied that the October 4 Letter admitted to the existence of Confidential Information or Company property in Plaintiff's possession.  Further responding, the laptop referred to in the October 4 Letter is a personal laptop owned by Plaintiff and never owned by ProstaGene or sold by ProstaGene or Plaintiff to CytoDyn.

76.     Denied.  Further responding, the October 4 Letter invited CytoDyn's counsel to participate in a process regarding the handling of information on Plaintiff's personal laptop, in an

effort to balance the parties' respective concerns regarding information potentially contained thereon. CytoDyn's counsel did not respond in any fashion to that proposal until eight (8) months later, on June 3, 2020. Notwithstanding CytoDyn's belated response and notwithstanding that he has no obligation under the operative agreements to do so, Plaintiff has endeavored to cooperate in good faith with CytoDyn regarding materials contained on his personal laptop. On June 30, 2020, Plaintiff's counsel produced to CytoDyn documents from Plaintiff's personal laptop related to CytoDyn. Subsequently, ProstaGene, through its counsel, produced additional documents from Plaintiff's personal laptop relating to ProstaGene.

77. Denied.

78. It is admitted only that counsel for CytoDyn sent a letter to Plaintiff's counsel on June 17, 2020, which is a document that is in writing and speaks for itself.

79. Admitted in part; denied in part. It is admitted only that on June 30, 2020 Plaintiff, through his counsel, produced documents to CytoDyn. The remainder of the allegations contained in paragraph 79 are denied.

80. Admitted in part; denied in part. It is admitted only that on July 10, 2020, Plaintiff, through his counsel, publicly filed the Second Amended Complaint, which is a written document which speaks for itself. The remainder of the allegations in paragraph 80 are denied.

81. Admitted in part; denied in part. It is admitted only that on July 27, 2020, Plaintiff, through his counsel, publicly filed the Third Amended Complaint, which is a written document which speaks for itself. The remainder of the allegations in paragraph 81 are denied.

82. It is admitted only that on November 2, 2020, the Court issued a Memorandum Opinion and accompanying Order dismissing Count II of the Third Amended Complaint. The Court's Memorandum Opinion and Order are written documents which speak for themselves.

## COUNT I

83.     Plaintiff incorporates his answers to Paragraphs 1 through 82 as if fully set forth herein.

84.     Admitted.

85.     Denied, insofar as the Stock Restriction Agreement is a written document which speaks for itself.

86.     Denied.

87.     Denied.  Further responding, the Company wrongfully characterized Plaintiff's termination as one for Cause, even though Cause did not actually exist.

88.     Admitted in part; denied in part.  It is admitted that CytoDyn sent a letter to Plaintiff on September 13, 2019 regarding CytoDyn's intention to exercise its repurchase option under the Stock Restriction Agreement.  It is also admitted that the restricted stock is currently held in escrow.  The remainder of the allegations in paragraph 88 are denied.  Further responding, the restricted stock is being properly held in escrow pending the outcome of the instant litigation.

89.     Denied.  The allegations in paragraph 89 constitute conclusions of law to which no response is required and are therefore denied.  It is specifically denied that CytoDyn is entitled to the relief it seeks in paragraph 89.

## COUNT II

90.     Plaintiff incorporates his answers to Paragraphs 1 through 89 as if fully set forth herein.

91.     It is admitted that Plaintiff entered into the Employment Agreement and Covenants Agreement.

92.     Denied.  The allegations in paragraph 92 constitute conclusions of law to which no response is required and are therefore denied.

93.     Denied.  The allegations in paragraph 93 constitute conclusions of law to which no response is required and are therefore denied.

94.     Denied.  The allegations in paragraph 94 constitute conclusions of law to which no response is required and are therefore denied.  It is specifically denied that Plaintiff breached the Employment Agreement or Covenants Agreement.

95.     Denied.  The allegations in paragraph 95 constitute conclusions of law to which no response is required and are therefore denied.  It is specifically denied that Plaintiff breached the Covenants Agreement.

96.     Denied.  The allegations in paragraph 96 constitute conclusions of law to which no response is required and are therefore denied.  It is specifically denied that Plaintiff breached the Employment Agreement or Covenants Agreement or that CytoDyn has suffered any damages.

97.     Denied.  The allegations in paragraph 97 constitute conclusions of law to which no response is required and are therefore denied.  It is specifically denied that Plaintiff breached the Employment Agreement or Covenants Agreement or that CytoDyn has suffered any injury.

## COUNT III

98.     Plaintiff incorporates his answers to Paragraphs 1 through 97 as if fully set forth herein.

99.     It is admitted that Plaintiff entered into the Employment Agreement and Covenants Agreement.

100.    Denied.  The allegations in paragraph 100 constitute conclusions of law to which no response is required and are therefore denied.

101.    Denied.  The allegations in paragraph 101 constitute conclusions of law to which no response is required and are therefore denied.

102.    Denied.  The allegations in paragraph 102 constitute conclusions of law to which no response is required and are therefore denied.  It is specifically denied that Plaintiff breached the Employment Agreement or Covenants Agreement.

103.    Admitted.

104.    Denied.

105.    Denied.  The referenced July 25, 2019 letter is a written document which speaks for itself, and any inconsistent characterization thereof is denied.

106.    Denied.  The referenced September 30, 2019 correspondence is a written document which speaks for itself, and any inconsistent characterization thereof is denied.

107.    Denied.  The referenced correspondence is written and speaks for itself, and any inconsistent characterization thereof is denied.

108.    Denied.

109.    Admitted in part; denied in part.  It is admitted only that on June 30, 2020 Plaintiff, through his counsel, produced documents to CytoDyn.  The remainder of the allegations contained in paragraph 109 are denied.

110.    Denied.

111.    Denied.  The allegations in paragraph 111 constitute conclusions of law to which no response is required and are therefore denied.  It is specifically denied that Plaintiff breached

the Employment Agreement or Covenants Agreement or that CytoDyn has suffered any damages.

112.     Denied.  The allegations in paragraph 112 constitute conclusions of law to which no response is required and are therefore denied.  It is specifically denied that Plaintiff breached the Employment Agreement or Covenants Agreement or that CytoDyn has suffered any injury.

**COUNT IV**

113.     Plaintiff incorporates his answers to Paragraphs 1 through 112 as if fully set forth herein.

114.     It is admitted that Plaintiff entered into the Employment Agreement and Covenants Agreement.

115.     Denied.  The allegations in paragraph 115 constitute conclusions of law to which no response is required and are therefore denied.

116.     Denied.  The allegations in paragraph 116 constitute conclusions of law to which no response is required and are therefore denied.

117.     Denied, insofar as the Covenants Agreement is a written document which speaks for itself.

118.     Denied.  The allegations in paragraph 118 constitute conclusions of law to which no response is required and are therefore denied.

119.     Admitted.

120.     Denied.  The referenced July 25, 2019 letter is a written document which speaks for itself, and any inconsistent characterization thereof is denied.

121.     Denied.  The referenced correspondence consists of written documents which speak for themselves, and any inconsistent characterization thereof is denied.

122.     Denied.  The allegations in paragraph 122 constitute conclusions of law to which no response is required and are therefore denied.  It is specifically denied that Plaintiff breached the Employment Agreement or Covenants Agreement.

123.     Denied.  The allegations in paragraph 123 constitute conclusions of law to which no response is required and are therefore denied.  It is specifically denied that Plaintiff breached the Employment Agreement or Covenants Agreement or that CytoDyn has suffered any injury.

124.     Denied.  The allegations in paragraph 124 constitute conclusions of law to which no response is required and are therefore denied.  It is specifically denied that Plaintiff breached the Employment Agreement or Covenants Agreement or that CytoDyn has suffered any injury.

**COUNT V**

125.     Plaintiff incorporates his answers to Paragraphs 1 through 124 as if fully set forth herein.

126.     It is admitted only that Plaintiff executed a Bill of Sale in connection with the Transaction Agreement.  The Bill of Sale is a document which is in writing and speaks for itself, and any inconsistent characterization thereof is denied.

127.     Denied.  The Bill of Sale and the Transaction Agreement are documents which are in writing and speak for themselves, and any inconsistent characterizations thereof are denied.

128.     Denied.  Further responding, the laptop computer on which Plaintiff worked both before and after the closing of the Transaction Agreement, is owned by Plaintiff personally and was never owned by ProstaGene or sold by ProstaGene or Plaintiff to CytoDyn.  It is specifically denied that Plaintiff's personal laptop contained "voluminous" data or other information relating to the Purchased Assets.  On June 30, 2020, Plaintiff's counsel produced to CytoDyn documents

from Plaintiff's personal laptop related to CytoDyn. Subsequently, ProstaGene, through its counsel, produced additional documents from Plaintiff's personal laptop relating to ProstaGene.

129. Denied.

130. Denied.

131. Denied. Further responding, the laptop computer on which Plaintiff worked both before and after the closing of the Transaction Agreement, is owned by Plaintiff personally and was never owned by ProstaGene or sold by ProstaGene or Plaintiff to CytoDyn. Further responding, all assets sold by ProstaGene and/or Dr. Pestell to the Company, other than patents and patent applications that are located, if any anywhere, in the relevant patent office, were located as of the closing at the laboratory at LIMR, for which CytoDyn assumed the Occupancy Agreements effective November 16, 2018.

132. Denied. Further responding, in the October 4 Letter, Plaintiff's counsel invited CytoDyn's counsel to participate in a process regarding the handling of information contained on Plaintiff's personal laptop, but CytoDyn's counsel did not respond to that proposal until eight (8) months later. On June 30, 2020, Plaintiff's counsel produced to CytoDyn documents from Plaintiff's personal laptop related to CytoDyn. Subsequently, ProstaGene, through its counsel, produced additional documents from Plaintiff's personal laptop relating to ProstaGene.

133. Denied. The referenced September 30, 2019 correspondence is a written document which speaks for itself, and any inconsistent characterization thereof is denied.

134. Denied.

135. Denied. The allegations in paragraph 135 constitute conclusions of law to which no response is required and are therefore denied. It is specifically denied that (i) Plaintiff had

any obligation to "deliver" a laptop or any other equipment under the Bill of Sale or (ii) Plaintiff breached any obligation under the Bill of Sale.

136.    Denied. The allegations in paragraph 136 constitute conclusions of law to which no response is required and are therefore denied. It is specifically denied that Plaintiff breached any obligation under the Bill of Sale or that CytoDyn has suffered any damages.

137.    Denied. The allegations in paragraph 137 constitute conclusions of law to which no response is required and are therefore denied. It is specifically denied that Plaintiff breached any obligation under the Bill of Sale or that CytoDyn has suffered any injury.

WHEREFORE, Plaintiff demands judgment in his favor and against CytoDyn, and respectfully requests that this Honorable Court afford Plaintiff such other and further relief as is necessary and just, including costs and reasonable attorneys' fees.

## FIRST AFFIRMATIVE DEFENSE

CytoDyn's alleged causes of action are barred by its own material breaches of the agreements between the parties, for the reasons described in Plaintiff's Third Amended Complaint.

## SECOND AFFIRMATIVE DEFENSE

CytoDyn's alleged causes of action are barred in whole or in part by its failure to mitigate its alleged damages.

## THIRD AFFIRMATIVE DEFENSE

CytoDyn's alleged causes of action are barred in whole or in part to the extent CytoDyn has suffered no damages.

## FOURTH AFFIRMATIVE DEFENSE

CytoDyn's alleged causes of action are barred in whole or in part because CytoDyn's alleged damages, if any, were not caused by Plaintiff.

## FIFTH AFFIRMATIVE DEFENSE

CytoDyn's First Amended Counterclaims fail to state a claim upon which relief may be granted.

## SIXTH AFFIRMATIVE DEFENSE

CytoDyn's alleged causes of action are barred in whole or in part by its own unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

CytoDyn's alleged claims to damages are barred, in whole or in part, by the right of Plaintiff to recoupment and/or a set-off against any such damages.

## EIGHTH AFFIRMATIVE DEFENSE

CytoDyn is barred from recovery of damages or other relief to the extent that it or its representatives failed to perform conditions precedent, concurrent, or subsequent under the parties' agreements.

## NINTH AFFIRMATIVE DEFENSE

CytoDyn's alleged causes of action are barred in whole or in part by the doctrines of estoppel and waiver.

## TENTH AFFIRMATIVE DEFENSE

CytoDyn's alleged causes of action are barred in whole or in part due to anticipatory breach of the parties' agreements by CytoDyn.

## ELEVENTH AFFIRMATIVE DEFENSE

CytoDyn's alleged causes of action are barred in whole or in part to the extent CytoDyn prevented or frustrated Plaintiff's ability to comply with his obligations under the parties' agreements.

## TWELFTH AFFIRMATIVE DEFENSE

CytoDyn's First Amended Counterclaims fail to set forth a basis for its demand for the award of attorneys' fees and costs.

## RESERVATION OF RIGHTS

Plaintiff reserves his rights to amend or supplement these Affirmative Defenses in the event that facts are discovered through investigation or discovery which indicate that such additional affirmative defenses are appropriate.

Respectfully submitted,

Dated: November 24, 2020

*/s/ Michael C. Hochman*
Michael C. Hochman (DE No. 4265)
Monzack Mersky Browder and Hochman, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE 19801
Tel: (302) 656-8162
Fax: (302) 656-2769
mhochman@monlaw.com

-and-

Steven M. Coren (admitted *pro hac vice*)
Janice I. Daul (admitted *pro hac vice*)
KAUFMAN, COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170
scoren@kcr-law.com
jdaul@kcr-law.com
*Counsel for Plaintiff*
*Richard G. Pestell, M.D., Ph.D*