IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

RICHARD G. PESTELL, M.D., PH.D.                                     PLAINTIFF /
                                                        COUNTERCLAIM DEFENDANT

v.                                    Case No. 1:19-cv-01563

CYTODYN, INC. and CYTODYN OPERATIONS, INC.                    DEFENDANTS /
                                                        COUNTERCLAIM PLAINTIFFS

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion for summary judgment filed by Defendants CytoDyn, Inc. and CytoDyn Operations, Inc. (ECF No. 111). This matter has been briefed and is ready for consideration. (ECF Nos. 112, 113, 120, 126).

**I.   Background**

   **A.   Procedural Background**

On August 22, 2019, Plaintiff Richard G. Pestell, M.D., Ph.D. filed his complaint against CytoDyn, Inc., CytoDyn Operations, Inc., Scott Kelly and Nader Pourhassan. (ECF No. 1). On September 16, 2019, Defendants[1] filed a motion to dismiss Plaintiff's complaint. (ECF No. 11). On September 27, 2019, Plaintiff filed his first amended complaint. (ECF No. 15). On October 10, 2019, Defendants CytoDyn, Inc. and CytoDyn Operations, Inc. ("Company Defendants") filed a motion dismiss the first amended complaint. (ECF No. 17). On October 11, 2019, Defendants Kelly and Pourhassan filed a motion to dismiss the first amended complaint. (ECF No. 18). On June 12, 2020, the Court granted in part and denied in part the motion to dismiss filed by the Company Defendants (Order, ECF No. 30). The Court ordered that count two, Plaintiff's claim under the Pennsylvania Wage Payment and Collection Law[2] ("PWPCL"), of the first amended complaint was dismissed. *Id.* Since this was the only count against Defendants Kelly and

---

[1] The Company Defendants filed the motion to dismiss. However, Defendants Scott Kelly and Nader Pourhassan were added when they filed their joinder. (ECF No. 14).

[2] 43 P.S. § 260.1, et seq.

Pourhassan, their motion to dismiss was found moot. (Oral Order, ECF No. 32). On June 26, 2020, the Company Defendants filed an answer to Plaintiff's first amended complaint and asserted counterclaims against Plaintiff. (ECF No. 31).

On July 10, 2020, Plaintiff filed his second amended complaint realleging his PWPCL claims against the Company Defendants and Defendants Kelly and Pourhassan. (ECF No. 35). On July 17, 2020, Plaintiff filed his answer to the Company Defendants' counterclaims. (ECF No. 36). On July 22, 2020, Plaintiff sought leave to file a third amended complaint. (ECF No. 37). On July 24, 2020, the Company Defendants filed a motion to dismiss, and Defendants Kelly and Pourhassan filed a motion to dismiss. (ECF Nos. 38, 39). Subsequently, Plaintiff filed yet his third amended complaint on July 27, 2020. (ECF No. 41). On November 2, 2020, the Court granted the Company Defendants' motion to dismiss Plaintiff's PWPCL claims asserted in Plaintiff's third amended complaint. (ECF No. 49). As a result, the PWPCL claims against Defendants Kelly and Pourhassan were dismissed with prejudice and their motion to dismiss (ECF No. 39) was moot. (ECF No. 49). Plaintiff's remaining claims are against the Company Defendants for breach of contract and defamation, and Plaintiff seeks an entry of declaratory judgment against the Company Defendants. *Id.*

On November 16, 2020, the Company Defendants filed an answer and amended counterclaims to Plaintiff's third amended complaint. (ECF No. 50). The Company Defendants counterclaims are for breach of contract for disclosure of confidential information, failure to return confidential information, and failure to return affirmation of compliance with covenants agreement under the parties' employment agreement and covenants agreement. *Id.* The Company defendants also allege that Plaintiff breached a bill of sale, and they seek an entry of declaratory judgment against the Plaintiff. On November 24, 2020, Plaintiff filed his answer to the Company Defendants' counterclaims. (ECF No. 52).

On January 14, 2022, the Company Defendants filed a partial motion for summary judgment regarding Plaintiff's claims for monetary damages under the "*Madison Fund* Rule" arising out of his inability to sell the Company Defendants' Restricted Shares, regarding Plaintiff's defamation claim, and

regarding Defendants' Counterclaims for breach of the employment agreement and the covenants agreement. (ECF No. 111).

### B. Factual Background

Plaintiff joined the Company Defendants as their Chief Medical Officer ("CMO") and as a Board member when the Company Defendants purchased ProstaGene, LLC ("ProstaGene")—a privately held biotechnology start-up founded by Plaintiff—in an all-stock transaction which closed in November 2018. Upon Closing of the ProstaGene Transaction, the parties executed an employment agreement and Plaintiff became the Company Defendants' CMO on a permanent basis. (ECF No. 113-5). Plaintiff was also appointed to the Company Defendants' Board, as of the Closing date, and was later elevated to Vice-Chairman. *Id.* Section 4.1 of the employment agreement permitted the Company Defendants to terminate Plaintiff "for Cause" and Plaintiff to resign for "Good Reason." (ECF No. 113-2).

In the following months, disagreements began to arise between Plaintiff and the CEO, Nader Pourhassan. In June 2019, Pourhassan began to plan for the termination of Plaintiff. On July 22, 2019, Plaintiff sent a letter to Defendants in accordance with Section 4.1 of the employment agreement, which notified the Company as to conduct and conditions constituting "Good Reason" for Plaintiff to resign as an employee of the company and provided the Company Defendants the opportunity to cure these conditions. (ECF No. 120-3 at 8). On July 25, 2019, the Board of Directors made the decision to terminate Plaintiff. (ECF No. 113-1).

On July 26, 2019, Defendants issued a press release stating that the Board had "terminated the employment of [Plaintiff] for cause pursuant to the terms of his employment agreement with the Company." (*Id.* at 42–43). The same day, the Company Defendants filed a Form 8-K with the Securities and Exchange Commission (the "SEC") stating that Plaintiff had been "terminated . . . for cause pursuant to the terms of his employment agreement." (*Id.* at 48). The Company Defendants' Schedule 14A Proxy Statement filed with the SEC on August 21, 2019 again represented that Plaintiff's termination had been "for cause." (*Id.* at 69); (*id.* at 84) (August 22, 2019 Form 8-K stating the same and disclosing Plaintiff's filing of this lawsuit).

On September 13, 2019, following Plaintiff's termination, the Company Defendants sent Plaintiff a letter purporting to exercise the Repurchase Option pursuant to Sections 1(a) and 2 of the Stock Restriction Agreement. (*Id.* at 118–19). In the letter, the Company Defendants stated that it "expects to deliver to its Transfer Agent a letter which instructs the Transfer Agent to effect the transfer of the Restricted Stock to the Company's name on or about September 18, 2019." *Id.* On September 18, 2019, in response to the Exercise of Repurchase Option Notice Letter and the Company Defendants' efforts to transfer the stock, Plaintiff notified Computershare Trust Company, N.A., the transfer agent, of the dispute as to the Company Defendants' right to the stock and demanded that the stock remain in Plaintiff's name pending resolution of this lawsuit. (*Id.* at 122–23). For approximately twenty months, Plaintiff remained the owner of record of the stock and continued to exercise his rights as the owner of the stock, including by continuing to vote his shares as he did previously. (ECF No. 87 at ¶ D). On May 27, 2021, the 8,342,000 shares were transferred out of Plaintiff's Computershare account. (ECF No. 120-3 at 125). Ultimately, the Company Defendants stipulated to the return of the 8,342,000 shares to Plaintiff to be held in escrow. (ECF No. 87). Plaintiff has maintained his ownership interest in the 8,342,000 shares, but Plaintiff has been restricted from selling the stock.

## II.     Standard of Review

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden,

the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; see also *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating that the party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

### III. Discussion

#### A. Defamation

The Company Defendants ask the Court to dismiss Plaintiff's defamation claims. "Defamation is generally understood as 'a false publication calculated to bring one into disrepute.'" *Naples v. New Castle Cty.*, 2015 WL 1478206, at *12 (Del. Super. Ct. Mar. 30, 2015) (quoting *Read v. Carpenter*, 1995 WL 945544, at *2 (Del. Super. Ct. June 8, 1995)), aff'd, 127 A.3d 399 (Del. 2015). This Court has held that Plaintiff must prove the following elements: "(i) a defamatory communication; (ii) publication; (iii) the communication refers to the plaintiff; (iv) a third party's understanding of the communication's defamatory character; and (v) injury." *Clouser v. Doherty*, 2017 WL 3947404, at *7 (Del. Sept. 7, 2017); *Daniels v. (DHSS) Del. Psychiatric Ctr.*, 2017 WL 3475712, at *2 (D. Del. Aug. 11, 2017) (citing *Holmes v. News Journal Co.*, 2015 WL 1893150, at *2 (Del. Super. Ct. Apr. 20, 2015)).

The Company Defendants argue that: (1) these statements were true when made; (2) stating that an executive has been terminated "for Cause" from a public company is categorically not defamatory, even if not true; (3) the statements were privileged; (4) there is no evidence any third party understood the Company

Defendants' statements to be defamatory; and (5) Plaintiff cannot prove he was harmed.  Previously, this Court stated that Plaintiff's complaint sufficiently alleged a claim for defamation under Delaware Law and that the Company Defendants' arguments—that the allegedly defamatory statements were truthful and shielded by qualified privilege—center on factual determinations better suited for summary judgment or trial.  (Memo. Opinion, ECF No. 29 at 9–11).[3]

Here, Plaintiff's defamation claim centers around the allegation that his termination "for cause" was merely pretext because his termination came shortly after he sent a Notice Letter indicating that he planned on resigning.  (ECF No. 120-3 at 7–20).  The Company Defendants argue that the Board of Directors considered and approved "a motion to terminate [Plaintiff's] employment for Cause based on [Plaintiff's] willful and continued failure to perform the duties or obligations that are reasonably assigned by the Board and his refusal to report to the CEO per his Employment Agreement."  (ECF Nos. 113-1, 113-2).

Plaintiff has stated that "the record is replete with evidence that [the Company Defendants'] assertions of Cause were false, pretextual, and motivated by the CEO's vendetta."  (ECF No. 120 at 26).  Specifically, Plaintiff cites to his termination letter and Dr. Scott Kelly's[4] deposition testimony.  (ECF No. 120-3 at 29–31, 33–37).  The termination letter, dated July 25, 2019, states that Plaintiff's termination is "for Cause" and further states, "[a]mong other reasons, the Board has determined you willfully and continuously have failed to perform the duties or obligations reasonably assigned to you by the Board from time to time, and that such willful and continued failure is not susceptible to cure, as determined in the sole judgment and discretion of the Board."  (*Id.* at 30).[5]  In his deposition, Dr. Kelly testified that, beginning

---

[3] The Court's ruling was on the Company Defendants' motion to dismiss (ECF No. 17).  Previously, Judge Richard Andrews was assigned to this case, but this case was reassigned to the undersigned on October 1, 2021.  Judge Andrews ruled on the previously mentioned motion.  The Court will maintain the rulings of law previously decided in this case.  *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 (1988) (stating that when a court decides the rule of law, it should continue to govern the same issues that may arise later in the case).

[4] At the time of Plaintiff's termination, Dr. Kelly was the Chairman of the Board for the Company Defendants.

[5] The grievances about Plaintiff being unwilling to work with the CEO are noted in the email dated July 1, 2019.  (ECF No. 120-2 at 338–40).

in March 2019, he had to remind Plaintiff multiple times to report to the CEO. (Kelly Dep. 79:14 – 81:11, *Id.* at 34).

The terms and conditions of Plaintiff's employment were set forth in the employment agreement dated November 16, 2018. (ECF No. 113-2). The employment agreement defined the scope of Plaintiff's responsibilities under a section entitled "Duties and Obligations." (*Id.* at 3–4). In particular, Plaintiff had the duty to "report to, and be subject to the lawful direction of, the Board and the Chief Executive Officer of the Company." (*Id.* § 2.2). Pursuant to that same section, Plaintiff agreed to "perform to the best of his ability, experience, and talent those acts and duties, consistent with the position of Chief Medical Officer, as the CEO shall from time to time reasonably direct." *Id.*

Under Delaware Law, truth is an affirmative defense to a defamation action. *Barker v. Huang*, 610 A.2d 1341, 1350 (Del. 1992). It is sufficient that the statement is "substantially true." *Agar v. Judy*, 151 A.3d 456, 485 (Del. Ch. 2017) (quoting *Ramunno v. Cawley*, 705 A.2d 1029, 1035 (Del. 1998)). "If the alleged libel was no more damaging to the plaintiff's reputation in the mind of the average reader than a truthful statement would have been, then the statement is substantially true." *Riley v. Moyed*, 529 A.2d 248, 253 (Del. 1987) (citing *Gannett Co., Inc. v. Re,* 496 A.2d 553, 557 (Del. 1985)). The Court must consider whether the "gist" or "sting" of the statement is true. *Id.*

At the time the allegedly defamatory statements were made, it was true that Plaintiff was terminated "for cause". This statement does not convey the entirety of the situation, but it is, in fact, substantially true. While it is a close question, the Company Defendants' motion is granted. Therefore, Plaintiff's claim for defamation should be and hereby is dismissed with prejudice.[6]

**B.     Breach of the Covenants Agreement**

The Company Defendants argue that Plaintiff breached the covenants agreement by failing to return and destroy confidential information at the time of his termination. (ECF No. 112 at 22). In addition, it is

---

[6] The Court's decision is that it was "substantially true" that Plaintiff was terminated "for Cause", and this decision is limited only to the defamation claim. Whether the termination of Plaintiff after he submitted his Notice Letter constituted a breach of the employment agreement is a matter left for trial.

undisputed that Plaintiff did not sign and return the acknowledgement that was sent to him.[7] The Company Defendants state that this precludes Plaintiff from recovering lost wages. *Id.*

Concurrent with, and incorporated in, his employment agreement, Plaintiff executed the covenants agreement. (ECF No. 113-2 § 5.1). Under the covenants agreement, Plaintiff was obligated to "immediately return or destroy all materials . . . containing, summarizing, abstracting or in any way relating to the Confidential Information." (*Id.*, Schedule A § 2.3). When he returned or destroyed those materials, he was also required to "acknowledge to the Company, in writing and under oath, in the form attached as Exhibit A, that [he] complied with the terms of this Agreement." *Id.* Kelly's July 25, 2019 letter, notifying Plaintiff of his termination "for Cause", reminded Plaintiff of his continuing obligation under the covenants agreement to "return to the Company all Company property and information, and [that Plaintiff] may not retain copies of any such information." (ECF No. 120-3 at 31). Section 4.5 of the employment agreement provides that the Company Defendants' "obligations to provide the Severance Payments will immediately cease if the Executive breaches any of the provisions of the covenants agreement." (ECF No. 113-2 § 4.5).

The Court agrees with Plaintiff's argument that this matter is not ready for consideration. The Company Defendants' motion is therefore denied without prejudice.

### C. *Madison Fund* Rule

The Company Defendants ask the Court to measure Plaintiff's alleged damages from the date of the breach and to preclude Plaintiff from seeking an additional award of damages under the *Madison Fund* Rule.[8] The Court's ruling on this portion of the motion is contingent upon a finding that the Company Defendants breached the employment agreement. That issue is still left for trial. The Company Defendants' brief cites to two cases to support this argument. *Scully v. US WATS, Inc.*, 238 F.3d 497 (3d Cir. 2001) and *Haft v. Dart Group Corp.*, 877 F. Supp. 896 (D. Del. 1995). Notably, both opinions were issued after a trial had taken place. Therefore, this portion of the motion should be denied without prejudice. This matter may be reconsidered after trial.

---

[7] (Pestell Dep. 82:2–21, ECF No. 113-2 at 18).
[8] *Madison Fund, Inc. v. Charter Co.*, 427 F. Supp. 597, 598–99 (S.D.N.Y. 1977).

**IV.     Conclusion**

For the reasons stated above, the Court finds that the Company Defendants' Motion for Summary Judgment (ECF No. 111) should be and hereby is **GRANTED IN PART AND DENIED IN PART**. This case remains set for trial on Wednesday, April 6, 2022, but it may be moved up on the Court's trial calendar to April 4th and 5th if the jury trial set for those dates resolves.

**IT IS SO ORDERED** this 18th day of March 2022.

*/s/ Robert T. Dawson*
**ROBERT T. DAWSON**
**SENIOR U.S. DISTRICT JUDGE**